W. E. FOLGER and Curtis Mathias, d/b/a Mathias and Folger Oil Company, Appellants,

v.

COMMONWEALTH of Kentucky, Department of Highways, Appellee.

Court of Appeals of Kentucky.

Dec. 11, 1959.

Pat Rankin, Stanford, for appellants.

Jo M. Ferguson, Atty. Gen., F. D. Curry, Asst. Atty. Gen., for Highway Dept.

BIRD, Judge.

On March 26, 1948, Forrest and Kathryn Harmon were engaged in the business of distributing oil products at wholesale. At this same time they were owners of a filling station property through which they were retailing their oil products. On this same day they conveyed the filling station property to Ralph Turton for the stated consideration of $15,000. The sum of $10,000 was paid in cash. In payment of the remaining $5,000, the grantors accepted an agreement from Turton providing that he, his heirs and assigns, would for fifteen years handle only the oil products distribut-

ed by the grantors, their heirs and assigns. All of this is recited in the deed. The terms of the agreement are shown by the deed as follows:

"To Have and To Hold unto the party of the second part, his heirs and assigns, the above described property, with all the appurtenances thereunto belonging, with Covenant of General Warranty, except that for the consideration of the Five Thousand dollars ($5,000.00) above set out, the party of the second part, for himself, his heirs and assigns, agrees that he will handle for sale only the gas, oil and petroleum products which the parties of the first part, Forrest L. Harmon and wife, Kathryn Harmon, their heirs and assigns, handle as distributors, and only automobile and truck tires and tubes which the said Harmons their heirs and assigns, handle as distributors, for a period of fifteen (15) years; and the parties of the first part, Forrest L. Harmon and wife, Kathryn Harmon, so long as they or their heirs and assigns are in the business as oil, gas and tire wholesale distributors, to furnish the party of the second part with such of the above mentioned products as he will require at the prevailing market price, except under circumstances beyond the control of the said Harmons, their heirs and assigns. This condition shall be specifically enforced."

On November 11, 1948, the Harmons sold their distributing business to the appellants together with their rights under the agreement.

The filling station property passed through various owners to Joe Embry who, like his predecessors in title, honored the provisions of the original deed and sold only the products of the Harmons' successor in the distributing business.

In 1957, while the title was still in Embry, the Commonwealth of Kentucky, in exercise of its sovereign power, acquired the property for the purpose of highway construction. In March 1958, the Commonwealth in the course of the highway construction caused said property to be destroyed and rendered useless for the purpose of selling oil products.

The appellants, successors to the Harmons in the oil business, claim such interest in the property as to require compensation from the Commonwealth. The Commonwealth refused to pay and the appellants sued to recover the value of their alleged interest in the property.

The Commonwealth moved for judgment on the pleadings under CR 12.03 and CR 53.02. The trial court, having before it the pleadings and exhibits, sustained the motion for judgment and dismissed the action. The claimant appeals to this Court.

The trial court reached the following conclusion:

"The contract and deed filed as an exhibit to the plaintiffs' Complaint shows on the face of it that it is merely a contractual right by which the plaintiffs are entitled to furnish to Embry and his successors in title certain filling station supplies for sale.

"This is not such an interest in the real estate as would entitle the plaintiffs to be compensated therefore in a condemnation proceedings."

In these conclusions the appellant insists that the trial court is in error.

■ Let us first determine the nature of the agreement for which the original grantors remitted $5,000 of the original consideration. In Trosper v. Shoemaker, 312 Ky. 344, 227 S.W.2d 176, we properly treated an agreement of this kind as a restrictive covenant. In that case it was specifically provided that the covenant should run with the land. While we do not have such specification in the present case, it is clear that the grantee's successors in title are bound by the covenant as between them and the original grantors.

We must next determine whether grantors' successor in the distributing business is entitled to enforce the covenant as against the grantee's successors in title. The covenant provides that the grantee, his heirs and assigns will handle the petroleum products sold not only by the grantors but their heirs and assigns in the distributing business as well. Under the authority of the Trosper case, supra, we must hold that if the grantors' assigns continue in the distributing business and if grantee's assigns continue to retail oil products on the described premises, the covenant is enforceable for a period of fifteen years by the assigns of the grantors against the assigns of the grantee.

It is true that either set of assigns could, with immunity, have gone out of business under the agreement but such is not the case. The premises continued throughout the years to be used as contracted between the original parties. Thus at the time of the taking of the property there existed in the plaintiff, as grantors' assignee, an enforceable contractual right to use the property or have it used as a retail outlet for the petroleum products sold by him at wholesale. This right was destroyed by the taking.

We must now determine whether this contractual right of use constitutes property for which a condemnor must pay upon taking it for public use.

In 18 Am.Jur., Section 160, p. 790, it is held:

"When contract rights are taken for the public use, there is a constitutional right to compensation in the same manner as when other property rights are taken." ·

■ We can, we think, adopt the foregoing rule with the following reservation: The interest or estate created by the contract right must not be so remote as to be incapable of evaluation. Brooklyn Eastern Dist. Terminal v. City of New York, 2 Cir., 139 F.2d 1007, 152 A.L.R. 296; 322 U.S. 747, 64 S.Ct. 1158, 88 L.Ed. 1579.

■ The right of use in this case is immediate and it cannot be said that the property interest created by the contractual right is at all remote. It is therefore our conclusion that the claimant was entitled to be paid by the condemnor for the destruction of his right to use the property for the remainder of the fifteen years as a retail outlet for his wholesale distribution.

The judgment is therefore reversed for proceedings not inconsistent with this opinion.

MONTGOMERY, Chief Justice (dissenting).

I am unable to agree with the majority opinion. First, there is no obligation on the part of the grantee in the deed, his heirs and assigns, to continue to use the oil products distributed by the grantors. The grantee's only obligation is to use the products of the grantors if he handles oil products. If the grantee should, for example, change the nature of his business from a filling station to a flower shop, under the terms of the deed as I understand them, there would be no obligation on his part to use oil products. This is only one instance in which the grantee would not be obligated to continue to use the oil products distributed by the grantors. Death of the grantee or destruction of the filling station facilities are other instances that readily come to mind. I cannot conceive of such a right being subject to condemnation.

Second, the value of such a right is not susceptible of evaluation. The damages from the loss of such a right are, of necessity, remote and speculative. The success or failure of a filling station business usually depends on the way in which it is operated. Inasmuch as it is recognized in the conveyance that the property may be transferred, it might be transferred to one who could not or would not conduct a successful and profitable filling station business. This circumstance, as well as those suggested in the preceding paragraph, illustrates the difficulty in trying to evaluate the right claimed by appellants.

 

STEWART, J., also dissents for the above reasons and for the additional reasons that he does not feel that the right claimed is a covenant running with the land and is not identified with the land conveyed by the deed.